UTICA,
July, 1836.

Goff
v.
Kilts.

---

## GOFF *vs.* KILTS.

The owner of *bees*, which have been reclaimed, may bring an action of *tres-pass* against a person who cuts down a tree into which the bees have en-tered *on the soil of another*, destroys the bees and takes the honey.

Where *bees* take up their abode in a tree, they belong to the *owner of the soil*, if they are *unreclaimed;* but if they have been *reclaimed,* and their owner is able to identify his property, they do not belong to the owner of the soil, but to him who had the former possession, although he cannot enter upon the lands of the other to retake them without subjecting himself to an action of trespass.

ERROR from the Madison common pleas. Kilts sued Goff in a justice's court in *trespass* for taking and destroying a swarm of *bees* and the honey made by them. The swarm left the hive of the plaintiff, flew off and went into a tree on the lands of the Lenox Iron Company. The plaintiff kept the bees in sight, followed them, and marked the tree into which they entered. Two months afterwards the tree was cut down, the bees killed, and the honey found in the tree taken by the defendant and others. The plaintiff re-covered judgment, which was affirmed by the Madison com-mon pleas. The defendant sued out a writ of error.

*S. Chapman,* for plaintiff in error.

*J. A. Seeber,* for defendant in errror.

*By the Court*, NELSON, J.   Animals *feræ naturæ*, when re-claimed by the art and power of man, are the subject of a qualified property ; if they return to their natural liberty and wildness, without the *animus revertendi*, it ceases. During the existence of the qualified property, it is under the protection of the law the same as any other property, and every invasion of it is redressed in the same manner.   *Bees* are *feræ naturæ*, but when hived and reclaimed, a person may have a qualified property in them by the law of nature, as well as the civil law.  Occupation, that is, hiving or enclosing them, gives prop-erty in them.   They are now a common species of property, and an article of trade, and the wildness of their nature by ex-perience and practice has become essentially subjected to the art and power of man.   An unreclaimed swarm, like all other wild animals, belongs to the first occupant—in other words, to the person who first hives them ; but if a swarm fly from the hive of another, his qualified property continues so long as he can keep them in sight, and possesses the power to pursue them.   Under these circumstances, no one else is entitled to take them.   2 *Black. Comm.* 393. 2 *Kent's Comm.* 394.

The question here is not between the owner of the soil up-on which the tree stood that included the swarm and the owner of the bees : as to him, the owner of the bees would not be able to regain his property, or the fruits of it without be-ing guilty of trespass.   But it by no means follows, from this predicament, that the right to the enjoyment of the property is lost ; that the bees therefore become again *feræ naturæ*, and belong to the first occupant.   If a domestic or tame animal of one person should stray to the enclosure of another, the owner could not follow and retake it, without being liable for a trespass.   The absolute right of property, notwithstanding, would still continue in him.   Of this there can be no doubt. So in respect to the qualified property in the bees.   If it con-tinued in the owner after they hived themselves, and abode in the hollow tree, as this qualified interest is under the same protection of law as if absolute, the like remedy existed in case of an invasion of it,   It cannot, I think, be doubted, that if the property in the swarm continues while within sight of

UTICA,
July, 1836.

Goff
v.
Kilts.

the owner—in other words, while he can distinguish and iden-
tify it in the air—that it equally belongs to him if it settles
upon a branch or in the trunk of a tree, and remains there
under his observation and charge.    If a stranger has no
right to take the swarm in the former case, and of which
there seems no question, he ought not to be permitted to take
it in the latter, when it is more confined and within the con-
trol of the occupant.

It is said the *owner of the soil* is entitled to the tree and all
within it.    This may be true, so far as respects an unreclaim-
ed swarm.    While it remains there in that condition, it may,
like birds or other game, (game laws out of the question,)
belong to the owner or occupant of the forest, *ratione soli.*
According to the law of nature, where prior occupancy alone
gave right, the individual who first hived the swarm would
be entitled to the property in it; but since the institution of
civil society, and the regulation of the right of property by its
positive laws, the forest as well as the cultivated field, belong
exclusively to the owner, who has acquired a title to it under
those laws.    The natural right to the enjoyment of the sport
of hunting and fowling, wherever animals *feræ naturæ* could be
found, has given way, in the progress of society, to the estab-
lishment of rights of property better defined and of a more
durable character.    Hence no one has a right to invade the
enclosure of another for this purpose.    He would be a tres-
passer, and as such liable for the game taken.    An exception
may exist in the case of noxious animals, destructive in their
nature.    Mr. Justice *Blackstone* says, if a man starts game in
another's private grounds, and kills it there, the property be-
longs to him in whose ground it is killed, because it was start-
ed there, the property arising *ratione soli.* 2 *Black Com.* 419.
But if animals *feræ naturæ* that have been *reclaimed,* and a
qualified property obtained in them, escape into the private
grounds of another in a way that does not restore them to their
natural condition, a different rule obviously applies.    They are
then not exposed to become the property of the first occupant.
The right of the owner continues, and though he cannot pur-
sue and take them without being liable for a trespass, still this
difficulty should not operate as an abandonment of the ani-

mals to their former liberty. The rights of both parties should be regarded, and reconciled as far as is consistent with a reasonable protection of each. The cases of *Heermance* v. *Vernay*, 6 *Johns. R.* 5, and *Blake* v. *Jerome*, 14 *id.* 406, are authorities for saying, ·if any were wanted, that the inability of the owner of a personal chattel to retake it while on the premises of another, without committing a trespass, does not impair his legal interest in the property. It only embarrasses the use or enjoyment of it. The owner of the soil, therefore, acquiring no right to the property in the bees, the defendant below cannot protect himself by showing it out of the plaintiff in that way. It still continues in him, and draws after it the possession sufficient to maintain this action against a third person, who invades it by virtue of no other claim than that derived from the law of nature. This case is distinguishable from the cases of *Gillet* v. *Mason*, 7 *Johns. R.* 16, and *Ferguson* v. *Miller*, 1 *Cowen*, 243. The first presented a question between the finder and a person interested in the soil ; the other between two persons, each claiming as the first finder. The plaintiff in the last case, though the first finder, had not acquired a qualified property in the swarm according to the law of prior occupancy. The defendant had. Besides, the swarm being unreclaimed from their natural liberty while in the tree, belonged to the owner of the soil *ratione soli*. For these reasons I am of opinion that the judgment of the court below should be affirmed.

Judgment affirmed.