Nash, J.
 

 When this was formerly before us, 4 Ired. 291, it was decided, that the defendant held the-premises under a special contract, which terminated his right to keep the possession on the 26th of October, 1842. The plaintiff had, in' duly 1841, given the defendant notice to quit, at the expiration of his time. On the last trial it appeared, the defendant quitted the premises in November 1843, after which, the plaintiff warranted him for the sum of $30, and judgment was confessed' by the defendant for the sum of $22 25, as rent accruing for the occupancy of the premises during 1842 and 1843. The warrant was dated November 1843. The defendant contended' that this was a Waiver of the notice to quit and an acknow-ledgement, on the part of the plaintiff, that, at the time this action Was brought, the defendant was his tenant.
 

 The general principle is unquestionable, as stated by the' defendant’s counsel. Where a tenant, who has received no-. tice to quit, holds on, and his landlord receives rent
 
 eo nominee
 
 from him for the' time, for which he does so hold over, it is a waiver of notice, and the relation of landlord and tenant continues.
 
 Goodright
 
 v.
 
 Cordivent,
 
 6 Term. 219, 220. So in the case
 
 Zouch
 
 v.
 
 Winingdale,
 
 a distress for rent accruing after the term of lease had expired was adjudged to be a waiver of the notice. In each of the above cases, the action in ejectment was brought after the'waiver of notice, and of course when the plaintiff had no right of entry. In the present case, at the time the action was commenced, the plaintiff had a clear right to enter. The term had expired, and the defendant was holding over. Does his subsequent action aud recovery by warrant waive the notice previously given, and reinstate the defendant in his position of tenant?
 
 Doe v. Batten,
 
 1 Cow. 243, is much like the present. There the defendant, who was tenant from year to year, held over after notice to quit, and the plaintiff brought his action of ejectment.
 
 AP
 
 terwards and while this suit was pending, the plaintiff receiv
 
 *574
 
 ed from the defendant a quarter’s rent. Upon the fiial this was rhled by Lord Mansfield, to be a waiver of notice, and the plaintiff was nonsuited. Afterwards, upon a doubt sug-ggsteq py hjs Lordship, the case was argued at length, upon a rule for a new trial. After argument, the Court decided, that as the plaintiff, at the time he brought his action, had a clear right so to do, the subsequent receiving of rent was not in law a bar to the action ; but, if there were any doubt as to the intention of the parties, as to whether the acceptance of the rent was mutually intended, or understood as a waiver of notice, it was a matter of fact to be left to the jury. Lord Kenyon, in the subsequent case of
 
 Goodright
 
 v.
 
 Cordevent,
 
 denies this doctrine, and
 
 that,
 
 upon a consideration of the case of
 
 Doe
 
 v.
 
 Batten,
 
 and also the case of Lord
 
 Onslow
 
 v.
 
 Eaton,
 
 cited in the argument. But it is to be remarked, he does not deny the authority of the case cited by Lord Mansfield,tried at the Lancaster Assizes, when Mr. Justice Gould was at the bar. In that case, an ejectment was brought, and an action also for use and occupation of the same premises, for rent which accrued subsequent to the time of the demise. In that case it was argued, as here, that the action for use and occupation was founded on a supposed permission of the plaintiff to the defendant, to occupy; therefore, it was an acknow-ledgement, on the part of the plaintiff, that the defendant was his tenant, and, consequently, a waiver of his notice. It was held, the actions were brought for several demands, to both of which the plaintiff was entitled; consequently the one was no waiver of the other, for, after the recovery in ejectment, the plaintiff was entitled to the profits for use and occupation. This case could not have escaped the notice of Lord Kenyon, and, though he has no hesitation in denying the main proposition, as decided by Lord Mansfield, he does not deny the authority of this case. In the case before us, it is stated, that the money recovered by the plaintiff in his warrant was
 
 for use and occupation,
 
 as in the anonymous case. The money here was not recovered as rent
 
 eo
 
 nomine, but for damages, for the use and occupation of the premises. This is further
 
 *575
 
 shown, by the fact as disclosed in the case, that, at the time the warrant issued, the defendant had left the premises. The sum paid was $> 22 25 due for the time he actually occupied the premises at $ 14 per annum, which is the rent mentioned in the agreement. This sum, then, was recovered by the plaintiff; not as rent, for he would have been entitled to $28 for two years, but as damages during the time the defendant did occupy the premises.
 

 • The argument for the defendant is, that the receipt of this sum is evidence, that there was a waiver of the notice and trespass, and that a new tenancy arose upon a lease from year to year. If the truth was, that this money was received
 
 as rent,
 
 we will not deny'the legal conclusion. But we think it a clear mistake to consider it as rent, although the parties called it so, and properly enough for the purposes of common parlance. But it was not rent, and
 
 could not
 
 have been received as such ; for
 
 as rent
 
 on
 
 that
 
 lease (if it existed, as supposed) it would not have been due until the 26th of October, 1843, and the sum would then have been $28, and not $22 25. This is conclusive, that the money was not demanded and paid as rent, properly speaking,"but as the damages, which the owner of the land had sustained by the defendant’s holding over for about 19 months.
 

 We conclude then with the judge, who tried the cause, that, under the circumstances of this case, the warrant brought by the plaintiff was not a waiver of his notice to the defendant.
 

 Per Curiam, Judgment affirmed.